*In re* Carter.

---

*In re* PATSY CARTER, *Petitioner.*

No. 15,726.   (93 Pac. 584.)

1. JURISDICTION — *Adoption Proceedings* — *Notice.* A juvenile court failed to acquire jurisdiction of an alleged dependent and neglected child because notice was not given to the child's mother, whose residence was known, and the probation officer was in no sense the child's guardian and could not bind the mother by his consent to adoption proceedings.

2. PARENT AND CHILD — *Care and Custody of Child.* Respondents, who claimed a child under void adoption proceedings, could not retain its custody, as against its mother, merely because their pecuniary circumstances were better than hers.

Original proceedings in *habeas corpus.* Opinion filed January 11, 1908. Writ allowed.

*D. E. Henderson,* and *L. A. Knox,* for petitioner.

*J. R. Thorne,* and *H. L. Burgess,* for respondents.

*Per Curiam:* This is an original proceeding in *habeas corpus,* brought by a mother to obtain the custody of her daughter, who is nine years old.

The uncontested findings of fact made by a commissioner appointed to take the evidence leave little to be decided. The findings are conclusive that the petitioner, Patsy Carter, has done nothing which would operate as a relinquishment or abandonment of her child to the respondents. The findings are further conclusive that the respondents knew very well where Patsy Carter lived at the time of the juvenile court proceedings. She was not notified, and therefore the proceedings are void for want of jurisdiction. (Laws 1905, ch. 190, § 5.) This being true, the probation officer was in no sense the child's guardian; he could not bind her mother by his consent to an adoption, and the adoption proceedings are utterly void.

It would seem that after respondent J. F. Botts had taken the child, as he thought, permanently, had assumed all the obligations of a parent to her, had undertaken to guard and keep her, to furnish her a home, supply her needs, nourish her and cherish her, he ought not to have sworn that she was "abandoned, destitute, homeless, and dependent upon the public for support," branded her a waif and a stray, and procured a juvenile court judgment to that effect—especially when he knew a good home and a devoted mother were waiting for the child only a few miles away. Doubtless he is unlearned in the law and does not understand the character of the proceeding, but it was in fact an outrageous attempt to prostitute a beneficent statute to fraudulent uses.

There remains only the welfare of the child to be considered. The court knows of no better custodian for a little girl than her mother, when the mother is of

high character, well situated to take care of the child, has proved her ability to rear a daughter, and bears for her children the full measure of a mother's love. The search for some one to stand *in loco parentis* is very brief when a capable, worthy and affectionate mother, who has done nothing to impair her right, pleads for the privilege in respect to the child she bore. The better financial resources of the respondents cannot be allowed to turn the scale. Children born in mangers and in the humblest log cabins have been known to do well.

The initial misunderstanding between the contestants is greatly to be regretted. The respondents are accorded the highest praise in the findings of fact for their treatment of Ruth, and she would doubtless be safe with them. But the mother is shown to be equally well qualified to discharge every duty and to bear every responsibility, and in such cases the mother-right, which has never been surrendered or forfeited, must prevail. The custody of the child, Ruth Botts, is awarded to her mother, Patsy Carter, who is also awarded her costs.