[Civ. No. 2846. Fourth Dist. Nov. 16, 1942.]

Estate of KATHERINE HAMPTON, Deceased. HAZEL L. SLIFF, Respondent, v. W. A. BOLTON et al., Appellants.

544

Herbert C. Kelly, John W. Holler and Sloane & Steiner for Appellants.

Stickney & Stickney, Clarence B. Smith and William H. Wylie for Respondent.

GRIFFIN, J.—Proponent Bertha Houghtaling offered for probate a will of the deceased dated April 6, 1938. Proponent W. A. Bolton offered for probate a will dated March 31, 1938. On April 20, 1938, Bolton filed a contest to the Houghtaling will. May 4, 1938, Houghtaling filed a contest to the probate of the Bolton will. Subsequently, respondent Hazel L. Sliff filed opposition to the probate of both wills. On the first trial of her contest, the trial judge then presiding ruled that the validity of the Houghtaling will should be tried first and at the conclusion of the evidence it erroneously granted a nonsuit as to the contest of that particular will (*Estate of Hampton,* 39 Cal.App.2d 488 [103 P.2d 611] [hearing in the Supreme Court denied]), admitted the Houghtaling will to probate and consequently no further proceedings were had in respect to the Bolton will. On the second trial, from which this appeal originates, over the objections of both proponents, the trial court ruled that all issues involving both wills should be tried together and before the same jury. The jury returned verdicts against both proponents and in favor of Hazel L. Sliff as to both wills. Probate as to these wills was thereafter, by order of the court, denied. From this order, after denial of a motion for a new trial, both proponents appeal.

Appellants' main grievance now is that the court im-

properly recognized Hazel L. Sliff and W. A. Bolton as contestants. At the outset of the hearing, the court overruled appellants' objection to the capacity of Hazel L. Sliff to maintain a contest and to the capacity of Bolton to appear further as a contestant. It was claimed that both rulings were erroneous and that neither of these persons was entitled to be heard in challenge of the proffered will or wills. The evidence produced at the second trial was, for all practical purposes, so similar to that set forth in the decision on the former appeal that we will not again repeat it here. There was, however, some additional testimony offered by appellants which, in effect, only created a conflict with that offered by respondent.

The evidence offered by the respective parties, which from the record appears to be substantial, if believed by the jury, would have been sufficient to support either contention. This was a matter purely for the determination of the jury and the good judgment of the trial judge on the motion for a new trial. Their determination being adverse to appellants, it will not now be disturbed on appeal. (*Chichester* v. *Seymour*, 28 Cal.App.2d 696 [83 P.2d 301]; *Raymond* v. *Glover*, 144 Cal. 548 [78 P. 3].) Appellants claim that since the perfection of the former appeal they discovered that respondent Hazel L. Sliff had been legally adopted in the State of Kansas in October, 1901, by Jesse and Mary Ann Parker; that under section 257 of the Probate Code she was not entitled to maintain the contest and had lost her right to inherit by reason of that fact. In support of this defense appellants offered in evidence an authenticated copy of the record of proceedings in reference to the abandonment and adoption proceedings had in the State of Kansas. The trial court sustained an objection of respondent to the offer on the ground that "lack of jurisdictional findings being apparent on the face of the record, I am compelled to hold that the adoption in the State of Kansas is a nullity."

Appellants contend that the authenticated copy of the proceedings had in the Probate Court of Sedgwick County, Kansas, is conclusive and is not subject to collateral attack on the ground of lack of jurisdiction.

It is conceded by respondent that if the proceedings above mentioned are valid, section 257 of the Probate Code

would compel a reversal of this judgment insofar as any judgment rendered in her favor is concerned. That section provides that "an adopted child succeeds to the estate of one who has adopted him, the same as a natural child. . . . An adopted child does not succeed to the estate of a natural parent when the relationship between them has been severed by the adoption. . . ." (*In re Darling,* 173 Cal. 221, 228 [159 P. 606].)

Section 370 of the Probate Code provides that any person "interested" may contest a will. Under the uncontradicted evidence in this action the question whether respondent is a person "interested" is a question of law. (*Estate of Nelson,* 191 Cal. 280, 283 [216 P. 368].) The burden was upon the contestant Hazel L. Sliff to show her interest. (*Estate of Land,* 166 Cal. 538 [137 P. 246] ; *Estate of Butzow,* 21 Cal.App.2d 96, 99 [68 P.2d 374].) Although appellant Houghtaling's original answer denied that respondent Sliff was the daughter of the deceased, on the first trial of the action counsel for this appellant stipulated in open court in reference to the capacity of respondent to maintain the contest, as follows: "Mr. Sloane: . . . I think we may be able to save time here. I will say I have read these depositions, and it is all the information any of us are going to have on subject of relationship of this Mrs. Sliff to Mrs. Hampton, and I am satisfied that they make a *prima facie* showing of the fact that Mrs. Hampton did bear an illegitimate child and that that child was given to the Parker family to be brought up and that she has the capacity to maintain that contest." Then, in answer to the court's question, ". . . she is the daughter?", Mr. Sloane answered: "That she is the daughter by blood of the decedent and that would make it unnecessary to read all of this evidence. We concede that she is entitled to maintain a contest as a daughter." In the trial of the second action appellants made no such stipulation but relied upon the denial of such relationship in their answer.

In reference to the facts leading up to the offer of the proffered abandonment and adoption proceedings, the following evidence was produced: That respondent was the illegitimate daughter of Katherine Hampton, deceased; that she was born in Arkansas City, Kansas, March 19, 1897, at which time her mother "Kitty Higgins" was about 16 years of age; that some six weeks later the mother took the child

to Wichita, Kansas, and placed her in the home of Jesse and Mary Parker, now deceased; that the mother visited the Parkers two or three times during 1898 and 1899; that at that time the Parkers wanted to adopt the child but, as stated by the Parkers' own son, ". . . my mother wanted to adopt the child, and I believe she (Kitty Higgins) went so far at one time as to promise to let her adopt her, and then when the time came right down to the point, she said that she could not give her away"; that on May 12, 1900, the mother wrote to Mrs. Parker from Little Rock, Arkansas, seeking a picture of her child, stating: "Hazel is on my mind all the time and I pine to see her. Enclosed find a $2 bill . . . I will send you some more when my hubby comes back"; that she stated that she was going to California; and that the Parkers heard nothing further from the mother.

In October, 1901, proceedings were taken to declare Hazel Higgins (now Sliff) a neglected child. Adoption proceedings followed. The nature of these proceedings must be set forth to analyze their validity properly. The forms prescribed in section 4215, section 34, chapter 67, article 2, page 890 of the 1901 General Statutes of Kansas were followed.

One F. B. Stanley signed and verified "an information and complaint" addressed to the probate judge of Sedgwick County, Kansas, alleging that Hazel Higgins is "a neglected child, who is dependent on the public for support, having no home or proper guardianship; in circumstances exposing the child to an idle and dissolute life, being deserted by its parents, in violation of the statutes of the state of Kansas. . . . " The probate court then issued an order to show cause directed to the Parkers, and to "Kitty Higgins, parents and custodians of Hazel Higgins," requiring them to appear before it on a day fixed to show cause why the judge of that court should not order the delivery of the named child to the Kansas Children's Home Society. On this order was an endorsement by the sheriff to the effect that he received the writ and "served same by delivering a certified copy of this writ personally to Mary Ann Parker and Jesse Parker on the 9th day of Oct., 1901, *and I could not find the within named Kitty Higgins in my County,* (Sedgwick County)." (Italics ours.) A decree followed reciting that on October 14, 1901, "Hazel Higgins, a neglected child, having been brought before me by F. B. Stanley . . . to determine if the said Hazel Higgins is a neglected child within the meaning

of the statutes of Kansas . . . and whereas, due notice of said investigation has been served according to law on Jesse Parker and Mary Ann Parker, custodians and persons having the actual possession of said child, *and notice was issued to the mother of said child Kitty Higgins, and said notice was returned by the sheriff of Sedgwick Co., Kansas, with the report that said sheriff was unable to find said Kitty Higgins within the county* and the said Jesse Parker and Mary Ann Parker now appearing in open court: Upon examining the notice and hearing the evidence offered . . . and having investigated the facts, I do find that the proper notices have been served, and that the proceedings are regular, and that the said Hazel Higgins is a neglected child within the meaning of the statutes.'' (Italics ours.) ''. . . that the said Hazel Higgins is a neglected child who is dependent on the public for her support having no home and having been deserted by her mother and only parent and having had almost no support from her said mother or other relatives; and it being found in circumstances exposing it to an idle and dissolute life; I do hereby order . . . that . . . Hazel Higgins be delivered in the care, custody and control of the Wichita Children's Home . . . pursuant to said findings and the provisions of the act of the legislature of the State of Kansas, in the year 1901.''

The following day a relinquishment was signed by the president of the home, an offer to adopt was signed by the Parkers, and after these documents were filed a decree was signed in that same court reciting that ''on the application of Mary E. Larkin, president of the board of directors of the Wichita Children's Home, for the adoption of Hazel Higgins . . . and the said Jesse Parker and Mary Ann Parker file their consent in writing to adopt the said Hazel Higgins as their child and heir at law, and the said Jesse Parker and Mary Ann Parker all being before the court for hearing at this time, the court after hearing the evidence and being fully advised in the premises, finds: . . . That Mary E. Larkin . . . has the right to relinquish children for adoption admitted to such Home. That Hazel Higgins was relinquished to the care and custody of said home on or about the 14 day of October, 1901, and such child was admitted to such home at that time. That said home has had the care, custody and control of said child since that time, and now has the legal control of the same. The court further finds that said relinquishment and acceptance are each free and voluntary

and made in good faith . . . that the said Jesse Parker and Mary Ann Parker desire to adopt said child by the name of Hazel Parker as their child and heir at law of them. . . .''

A decree of adoption was then entered according to these findings. This decree and the record of the abandonment proceedings above mentioned were the duly authenticated copies offered in evidence but refused by the trial court for the following stated reason: ''Perhaps I would have to give full faith and credit to it (Kansas abandonment and adoption proceedings) if the showing was made that the parents were served or that their whereabouts were unknown, or that publication of the so-called writ was made, but certainly no court can take jurisdiction over a mother which divests a person of something more sacred than property upon a mere statement of the sheriff that the party is not in his county. The court had no jurisdiction over Katherine Higgins, the natural mother of the child. The court had no jurisdiction of the case.''

The Kansas statutes cited by appellants as applicable at the time are General Statutes of Kansas (1901 ed.), pages 882 to 888, chapter 67, articles 1 and 2, sections 4182 to 4209 inclusive; and cited by respondent as applicable in reference to service of notice to the parent, are General Statutes of Kansas, 1897, volume 2, chapter 95, page 106, section 63; volume 2, page 242, section 558; volume 2, page 105, section 59, and section 72, page 109.

Legislative control over adoption and succession is absolute and our statutes of adoption must be read into our succession laws. (*Estate of Jobson,* 164 Cal. 312 [128 P. 938, 43 L.R.A. N.S. 1062]; *In re Darling, supra; Estate of Mercer,* 205 Cal. 506, 512 [271 P. 1067]; *Estate of Jones,* 3 Cal.App. 2d 395, 400 [39 P.2d 847]; *Estate of Stewart,* 30 Cal.App.2d 594, 595 [86 P.2d 1071]; *Estate of Grazzini, supra.*) The laws of Kansas and California are not at variance in regard to the sanctity of adoption decrees against collateral attack and as to the presumptions which must be indulged in to support them. (*Dowdell* v. *Sunflower Grand Lodge, K. P. of Kansas,* 91 Kan. 128 [136 P. 920]; *Denton* v. *Miller,* 110 Kan. 292 [203 P. 693]; *Chamberlin* v. *Thorne,* 145 Kan. 663 [66 P.2d 571]; *Estate of Grazzini,* 31 Cal.App.2d 168, 171 [87 P.2d 713]; *Adoption of Kelly,* 47 Cal.App.2d 577 [118 P.2d 479]; *In re Bartholomew,* 29 Cal.App.2d 343, 347 [84 P.2d 199]; *Kaufmann* v. *California Mining etc. Syn.,* 16 Cal.

2d 90 [104 P.2d 1038]; *McHatton* v. *Rhodes*, 143 Cal. 275, 277 [76 P. 1036, 101 Am.St.Rep. 125]; *Estate of Wiechers*, 199 Cal. 523, 527 [250 P. 397]; *Estate of Estrem*, 16 Cal.2d 563, 570 [107 P.2d 36]; *In re Silva*, 213 Cal. 446, 448 [2 P. 2d 341]; *Almquist* v. *Garner*, 53 Cal.App. 305, 308. [200 P. 76].) However, with equal force, it has been held in this state that a judgment of a sister state is binding upon the courts of this state, if valid, by virtue of the full faith and credit clause of the United States Constitution (art. IV), but the jurisdiction of the court of a sister state in which a judgment is rendered, may be questioned collaterally in another state notwithstanding the full faith and credit clause and notwithstanding the jurisdictional recitals in the judgment, if extrinsic fraud exists with respect to the jurisdiction, and the judgment may be ignored if want of jurisdiction appears on the face of the record or is shown as to the subject matter or the person. (*Hammell* v. *Britton*, 19 Cal.2d 72 [119 P.2d 333]; *Ryder* v. *Ryder*, 2 Cal.App.2d 426, 431 [37 P.2d 1069]; *DuQuesnay* v. *Henderson*, 24 Cal.App.2d 11 [74 P.2d 294].)

In *Estate of Pusey*, 177 Cal. 367 [170 P. 846], where the copies of an affidavit and order for publication were introduced as evidence to impeach the judgment, it was held that they may be considered in contesting the invalidity of a foreign judgment and that this may be shown collaterally by evidence which is not incorporated into the part of the record constituting the technical judgment roll. In *People* v. *Harlow*, 9 Cal.App.2d 643, 646 [50 P.2d 1052], which involved a Mexican decree of divorce, it was held that by section 1917 of the Code of Civil Procedure the jurisdiction of Mexican courts must be "over the cause, over the parties, and over the thing, when a specific thing is the subject of the judgment." (See, also, *Estate of Estrem*, 16 Cal. 2d 563, 570 [107 P.2d 36].)

The presumptions in favor of the recitals of due service in a judgment of a sister state are subject to certain exceptions. If a judgment recital is such as to show affirmatively that it is based upon an attempted service which is in fact a nullity, or if such recital is consistent with the idea that the other portions of the record show all that was done, a different situation is presented. (*In re Eichhoff*, 101 Cal. 600, 603 [36 P. 11].) Where it affirmatively appears in the record that the proceedings were not regular, the presump-

tion will not be indulged in. (*In re Application of Tassey*, 81 Cal.App. 287, 290 [253 P. 948] ; *Crouch* v. *H. L. Miller & Co.*, 169 Cal. 341 [146 P. 880].) A similar rule prevails in Kansas. In *Chamberlin* v. *Thorne*, (Kan.) *supra*, it was held that the presumption is that the necessary jurisdictional facts existed. Such presumption cannot be indulged in where the record shows what was done in the attempt to make service and those facts are insufficient to constitute legal service.

Counsel for appellants contend that the recitals appearing in the order of October 14, 1901, that "said notice was issued to the mother of said child, Kitty Higgins" and that "said notice was returned by the sheriff of Sedgwick County, Kansas, with the report that said sheriff was unable to find said Kitty Higgins within the county," together with the other recitals, are conclusive that the probate court had jurisdiction over Kitty Higgins, the child's mother, and over the subject matter, the custody of her child, and that the decree of adoption is not subject to collateral attack since it contains recitals of due service. We are satisfied that these recitals are not conclusive.

We must therefore determine whether, from the proffered record before us, under the law and under the due process provision of our Constitution (Fourteenth Amendment to Constitution of United States, § 1), sufficient notice was given whereby that court acquired jurisdiction of the cause and *parties.*

The sections of the statutes of Kansas in reference to the notice described may be thus summarized: In reference to adoption proceedings generally, section 4187, section 6 of the Statutes of 1901 above mentioned, then provided that any person may offer to adopt any minor child provided "such minor and his or her parents, if living and in the state, or guardian, if any, appear before such court and consent to such adoption." Section 4200, section 19 of the 1901 Statutes of Kansas then provided that any child apprehended under section 4199, section 18, Statutes 1901, shall be brought before the proper court for examination within three days after such apprehension and "it shall thereupon be the duty of the court to investigate and ascertain whether such child is dependent and neglected . . . its age, and the name and residence of its parents." The section further provided: *"The parents (if their whereabouts is known) or persons having the actual custody of such child* shall be duly notified of

such examination not less than three days before the day set for such examination . . . and if on such examination the court finds that any child is dependent or neglected . . . he shall enter such findings by proper order to that effect, and shall order delivery of such child to such children's aid society or institution as in his judgment is best suited to deal with said child.'' Section 4195, section 14, of the 1901 Statutes of Kansas, in reference to children's homes, provided that in such incorporated children's homes, they shall have legal custody of all children committed to them by the legal or natural guardians or by any ''magistrate of any county . . . with . . . all the rights appertaining to the natural or legal guardians''; and ''the president of the board of directors of any such corporation may appear in the probate court of any county where such home . . . is located, without the consent of either parent or guardian, and consent to the adoption of such children. . . .'' Section 4202, section 21, 1901 Statutes of Kansas (in reference to the ''Title to Child'') then provided that the institution shall be the legal guardian of any child so committed ''and all the powers and rights of the parents in respect of that child shall vest in the said society or institution; and it shall be the duty of said children's aid society or institution to use special diligence in providing suitable homes for such children as may in this way be committed to their care; and such society or institution is hereby authorized to secure for such children legal adoption. . . .'' Section 4206, section 25, Statutes of Kansas (1901) then provided: ''If it appears to any . . . probate court, on motion made before him, under oath, by any person who in the opinion of the court is *bona fide* acting in the interest of any child, that there is reasonable cause to suspect that such child, . . . has been or is being ill-treated or neglected in any place within the jurisdiction of such court . . . such . . . probate judge may issue a warrant authorizing any proper person named therein to search for the child, and if it is found to have been . . . neglected . . . to . . . detain it in a place of safety until it can be brought before the proper court; and the court before whom the child is brought may cause it to be dealt with in a manner provided for by sections 4 and 5 of this act.''

Respondent now argues that under the statutes there are only two means whereby proceedings might be had, wherever a child is neglected or abused by its parents, when

the court may deliver the child to an institution for the care of children, by means of which the institution is vested with the power and authority to consent to its adoption: (1) the apprehension of the child by a peace officer without warrant, and the bringing of such child before any court of summary jurisdiction under section 4199, section 18, Statutes of Kansas, 1901; and (2) upon motion made before any court of summary jurisdiction, under oath, by any person who in the opinion of the court is *bona fide* acting in the interest of any child where there is probable cause to suspect that such child has been ill-treated or neglected under section 4206, section 25, Statutes of Kansas, 1901; that the authenticated copy of the record of the proceedings had in the Kansas court discloses that neither of the foregoing methods of acquiring jurisdiction over the alleged neglected child was followed in that F. B. Stanley, the informant, was neither a constable nor peace officer; that he had no warrant issued by the probate court; that he was not only unauthorized to apprehend Hazel Higgins but he never did, in fact, apprehend her nor bring her before any court of summary jurisdiction as required by the statute; that the authenticated copy of the record contains neither finding nor recital that she was before the probate court of that county on October 9, 1901, when the probate judge granted the order to show cause on before or after the information and complaint were filed or that date; that she not having been brought before the probate court that day, no proceeding against her was then pending and the order to show cause granted by the probate court under such circumstances is void for lack of jurisdiction over the subject matter; that the judge, upon the filing of the information and complaint, did not issue any warrant authorizing Stanley, or any proper person, "to take such child and detain it in a proper place of safety until it can be brought before the proper court"; that the authenticated copy contains neither finding nor recital that the examination of Hazel Higgins was had within the time provided by the statute nor the facts required to be ascertained by the court during such examination; that the order to show cause is directed to Mr. and Mrs. Parker and Kitty Higgins, parents and custodians of Hazel Higgins; that the record, on its face, shows that a copy of said notice and order to show cause was not served upon Kitty Higgins personally or by publication; that the facts under which the court found

the minor child to have been a neglected child are not sufficiently set out in the proceedings; that there is no finding as to the name and residence of the mother of the child and that according to the record the information and complaint does not set forth facts sufficient to give the court any jurisdiction to make any valid order as to the care, custody or control of Hazel Higgins; that the decree of adoption does not recite that Hazel Higgins was present at the hearing of that proceeding; that the record is conclusive that the mother did not consent to the adoption and that the children's home was not legally appointed to do so in her place; that the relinquishment filed on behalf of the home was therefore a nullity; and that the home never had the possession nor control of Hazel Higgins.

The force of respondent's argument is mainly directed to the question of the validity of the service of the notice directed to be given *"to the minor's parents (if their whereabouts is known) or persons having the actual custody of such child."*

The complaint appears to be based mainly upon the contention that no jurisdiction was acquired by the court because, it is argued, under section 558, Statutes 1897, volume 2, page 242, and section 63, General Statutes of Kansas, 1897, volume 2, page 106, it is specifically provided that the service of the notice shall be made as required by law for the service of a summons and that since the notice above italicized was not so made, the proceedings are void. In support of this contention she cites *Chambers* v. *King Wrought-Iron B. Mfg. Co.*, 16 Kan. 270; and *Bradley, Wheeler & Co.* v. *Harwi*, 2 Kan.App. 272 [42 P. 411], which are civil actions and in effect hold that jurisdiction over the person of the defendant must and can only be acquired either by the issuance of or service of process in one of the ways pointed out in the statute, i. e., actual service or substituted service or by a voluntary appearance in court. *Thisler* v. *Little*, 86 Kan. 787 [121 P. 1123], is also cited, which case involved the question of the service of a notice of appeal. It was there held that when the appellee and his attorney reside in the State of Kansas the service of such notice must be made in the same manner as service of summons unless service be waived or acknowledged. (See, also, *Garfield* v. *Theis*, 9 Kan.App. 770 [59 P. 42].)

If respondent's contention is correct and the provisions

of these sections of the statutes required notice to the mother either by personal service or by publication, any judgment based thereon would be void for the reason that there was no service upon her of any description. However, we do not believe it necessary to determine the construction of those particular sections of the statutes for the reasons hereinafter expressed.

Under the Kansas statute, as it then existed, where a child was adopted under an ordinary proceeding (§ 4187, § 6, *supra*), after first having the child declared to be an abandoned child, notice was required to be given to such of the minor's parents as were then living in the state, or the guardian, if any. The section was subsequently amended (Stats. 1915, § 6362, § 6, p. 1264) to read that notice to appear should be given to such minor's parents as were then living in the state *and* the guardian (if any). And if the parents resided out of the state, written consent to the adoption was necessary.

Proceedings may be instituted in the State of California to declare a person free from the custody and control of his parents. (§ 775, et seq., Welfare and Institutions Code.) Provision, however, is here especially made for service by publication of notice to parents residing outside of the state or whose residence is not known to the petitioner. We find no similar provision in the section or sections pertaining to abandonment proceedings requiring service of notice by publication under the laws of Kansas as they then existed. Provision was made by our Legislature for notice to the parents by publication if not personally served in adoption proceedings commenced under section 224 of our Civil Code.

Without attempting to adopt Hazel L. Sliff under section 4187, section 6, *supra,* by giving the notice there required, petitioners attempted to avoid that requirement, in reference to notice, by seeking the aid of the abandonment proceeding which, as appellants contend, does not require notice of the examination or proceedings to be given to the parent if it is shown that the only parent authorized to give consent has neglected and abandoned the child, unless her whereabouts is known.

A proceeding by which the parent, entitled to the custody of his or her minor child, is deprived of such custody is a proceeding adverse to him or her. (*Guardianship of Van Loan,* 142 Cal. 423, 426 [76 P. 37].)

Jurisdiction to proceed in adoption proceedings has been thus declared:

"To give a decree of the county court adopting a child any validity, such court must have acquired jurisdiction (1) over the parties seeking to adopt such child, (2) over the child to be adopted, and (3) over the parents of such child"; and

"No person shall be personally bound by a decree until he has his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. A judgment without such citation and opportunity wants all the attributes of a judicial determination." (*Furgeson* v. *Jones,* 17 Or. 204, 20 P. 842 [11 Am.St.Rep. 808, 3 L.R.A. 529] [from syllabus].)

The question then arises, in this proceeding, did the court acquire jurisdiction of the parties? If not, the judgment awarding the custody of the minor child to the Wichita Children's Home for the ultimate purpose of allowing it to consent to the adoption of the child, rather than the parent, was void, and the adoption proceeding based on such a void judgment is likewise void.

In *Carter* v. *Botts,* 77 Kan. 765 [93 P. 584], a similar question was presented. There it was held, quoting from the syllabus:

"Under Laws 1905, p. 264, c. 190, establishing juvenile courts, and providing in section 5 (page 267) that on the filing of a petition setting forth that a child is dependent, neglected or delinquent, the parents of the child, if living and their residence known, shall be notified of the proceedings, where the residence of the mother of a child was known at the time of the proceedings, and she was not notified, the proceedings were void for want of jurisdiction, and hence the probation officer was in no sense the child's guardian, could not bind the mother by his consent to an adoption, and the adoption proceedings were void." See, also, *Titcomb* v. *Superior Court,* 220 Cal. 34, 40 [29 P.2d 206]; *Ex Parte Becknell,* 119 Cal. 496 [51 P. 692]; *In re De Leon,* 70 Cal. App. 1, 7 [232 P. 738]; *Sullivan* v. *People,* 224 Ill. 468 [79 N.E. 695]; *In re Jackson,* 55 Nev. 174 [28 P.2d 125, 127, 91 A.L.R. 1381]; *Jensen* v. *Hinckley,* 55 Utah 306 [185 P. 716]; *Child Sav. Inst.* v. *Knobel,* 327 Mo. 609, 37 S.W.2d 920; *People* v. *Feser,* 195 App.Div. 90 [186 N.Y.S. 443, 447]; *People* v. *Pickle,* 215 App.Div. 38 [213 N.Y.S. 70]; *In re Davis' Adop-*

*tion,* 142 Misc. 681 [255 N.Y.S. 416, 423] ; *Ex Parte Living-ston,* 135 N.Y.S. 328, 332; *Lewis* v. *Reed,* 117 Ohio St. 152 [157 N.E. 897] ; *Hersey* v. *Hersey,* 271 Mass. 545 [171 N.E. 815, 818, 70 A.L.R. 518] ; *Lacher* v. *Venus,* 177 Wis. 558 [188 N.W. 613, 617, 24 A.L.R. 403] ; *Denton* v. *James,* 107 Kan. 729 [193 P. 307, 310, 12 A.L.R. 1146].

Our attention has been called to many cases which hold that after service of notice (either personal or substituted) of such abandonment proceedings on the parent or parents, *no written consent* of such parent or parents is necessary if the trial court determines, on the hearing, upon proper and sufficient evidence, that the minor child has been abandoned by them. (*Estate of McKeag,* 141 Cal. 403 [74 P. 1039, 99 Am.St.Rep. 80] ; *Matter of Cozza,* 163 Cal. 514, 521 [126 P. 161, Ann.Cas. 1914A, 214] ; *Almquist* v. *Garner, supra.*) This is, however, not determinative of the issue here presented. ▮ The mere fact, if alleged in the petition and found by the court, that the parent neglected or abandoned the minor child, will not and does not dispense with the right of such parent to notice, either actual or constructive, of such proceeding, in order that he or she may appear and contest the question to be there determined, i. e., whether or not, in fact, he or she has actually neglected or intentionally abandoned the child so that the court may then be authorized to so declare it abandoned for the purpose of allowing the children's home to give consent to a subsequent adoption of the child in the place and stead of its natural parent by reason of her or his claimed misconduct. Our search has not revealed a case where this question has been definitely decided in this state. It was presented in the *Matter of Guardianship of Michels,* 170 Cal. 339 [149 P. 587]. There, one Verna Shaw, who had possession of petitioners' minor child, upon learning that petitioners, the natural mother and father of the minor child, desired to secure possession of it, proceeded to have the child declared, by the juvenile court, to be an abandoned child. On the day of the hearing the parents appeared. The trial court determined the minor to be an abandoned child. Petitioners appealed and claimed that they were entitled to notice of the proceeding and therefore the proceedings were void as being in violation of the Fourteenth Amendment to the Constitution. The Supreme Court said, speaking through Mr. Justice Henshaw:

"Upon the general proposition, suffice it to say this, that

it is unquestionably a part of the power as well as a part of the duty of the state to guide and guard its helpless young. In the exercise of that duty it is quite proper for the state to make provision for the custody, care and maintenance of abandoned children, and in so doing to provide process of law and a forum for the determination of the question whether or not a child is an abandoned child. Upon a determination of abandonment it is equally within the power and the duty of the state to provide for the care and nurture of the child in the future, and proceedings in guardianship and proceedings in adoption may be and by our law are based upon decrees of abandonment. And, finally, it is within the power of the state to declare what sins and acts of omission or commission shall constitute abandonment by the parent or parents. *Unquestionably due process of law demands some sufficient notice to the parents of the proceedings about to be taken, with an opportunity to the parents to be heard upon the issue.* But so far as concerns this case it appears by the petition that the parents not only received this notice, but responded to it. . . .'' (Italics ours.)

This same question was raised in *Matter of Cozza, supra,* but not decided for the same reason that the party entitled to notice appeared at the hearing. In *Bell* v. *Krauss,* 169 Cal. 387 [146 P. 874], a question of notice to the father of the contemplated adoption of his child by a third party was discussed. It was there held that he had been deprived of his child without due process of law. Many cases are there cited supporting the right of notice of such a proceeding. *In the Matter of Hart,* 21 Cal.App. 30 [130 P. 704], it was held that the mother, divorced from her husband for her adultery, was entitled to notice, the right to be heard, and to resist any attempt to relinquish parental control of her child to the Children's Home Society for the purpose of giving consent to adoption even though her husband had given his written consent, and, also, where it was claimed by petitioners that the child was an abandoned child and the parents had thereby relinquished all their right to it. *Ex Parte Becknell,* 119 Cal. 496 [51 P. 692], is cited therein, wherein it is said: ''Parents are the natural guardians and cannot be deprived of their right to the care, custody, society and services except by a proceeding to which they are made parties, and in which it is shown that they are unfit or unwilling or unable to perform their parental duties.''

1 California Jurisprudence, page 429, section 12, after setting forth the provisions of section 224 of the Civil Code in reference to notice of abandonment proceedings, reads:

"Such notice is required before there can be an adjudication by the juvenile court of an abandonment such as will afford a basis of adoption without the consent of the parent or parents guilty of the abandonment described in the section referred to. While the code does not in express terms otherwise provide for notice of adoption proceedings, it is clear that the code requirements as to appearance and consent imply that notice be given of such proceedings." See, also, page 440, section 21, where it is said:

"Unquestionably, due process of law demands some sufficient notice to the parents of the proceedings about to be taken, with an opportunity to the parents to be heard upon the issue."

Our attention has not been directed to any case in Kansas construing their statute in this respect. However, this question is discussed and many cases are cited in 1 American Jurisprudence, page 642, section 40, and page 644, section 44. It cites the rule stated in *Furgeson* v. *Jones, supra,* and discusses generally the necessity for notice of hearing on forfeiture of rights of parents. It is there said:

"The existence of the facts rendering consent unnecessary, though alleged in the petition, must be judicially determined, and notice is therefore an essential prerequisite to a valid decree and a cutting off of the parent's rights, for even where the parents, by their wrongful neglect or criminal conduct, have forfeited their right to give or withhold consent, it does not necessarily follow that they are not entitled to notice . . . although no notice may be specified by statute in cases where the rights of the parent have been forfeited by abandonment or other misconduct, notice will ordinarily be required in order to bind the parent on the question of such abandonment or misconduct. The object of notice is not merely to bind those who have not consented and without whose consent the adoption cannot be made. It is more than this—it is to bind those who are entitled to be heard upon the question whether they have forfeited their rights in regard to consent, and to prevent them, if notified, from again raising this question. Although notice is not always specifically required, the judicial proceedings by which adoption is effected are prescribed as a duty of courts of rec-

ord, wherefore it is presumed that the legislature intended that such proceedings should be in accordance with the usual practice of such courts, requiring notice as an element of due process. . . . Non-residence of the parent does not excuse failure to give notice to him, although constructive notice may be given where the residence of the parent is unknown. The only exception to the general rule that the rights of the parent, however much he may be at fault, cannot be cut off without notice to him and an opportunity to be heard in his own behalf exists in the presence of statutes providing for the divesting of the parent's natural rights in an adversary proceeding for that purpose, or of which it is an incident. Thus, it will be observed that the exception is apparent rather than real, inasmuch as the parent has, previous to the adoption proceeding, had his day in court and a full determination of his parental rights, so that there is no longer need of their protection at the time of the adoption. Where the custody of a child has been taken from the parents for delinquency, by adversary proceedings (upon due notice), notice of adoption proceedings is unnecessary, since the parents have already been divested of the custody and control of the child.''

See, also, *State* v. *District Court*, 75 Mont. 147 [242 P. 959], citing 1 Cal. Jur., page 429, section 12, wherein it was held that an order of adoption, entered without any notice to the child's mother, who was alleged to have abandoned the child, and who had not consented to the adoption, was without jurisdiction and void, and that notice of the adoption proceedings to the mother of the child was an indispensable element of due process, and that while their state adoption statute did not provide for notice in express terms, by implication it required that notice be given to parents of the child to be adopted, even though they were nonresidents of the state.

It therefore must follow that since it is an elemental and fundamental principle of law that notice to a party whose rights are to be affected by a judicial proceeding is an essential element of due process, the failure to give adequate notice to the mother of Hazel L. Sliff of the abandonment proceeding as an enabling step to securing the adoption of her child without her consent, was void as being in violation of the due process clause of our Constitution. The order of the trial court refusing the introduction of such

record into evidence must be sustained. In view of this de-
termination, it becomes unnecessary to analyze respondent's
other claimed reasons why the proceedings were void. These
proceedings being thus void upon their face, we think it
follows that the respondent, who was the central figure therein
and the person whose interests were mainly affected thereby,
has the right to attack the decree entered which purports
to thus interfere with her right of inheriting from her natural
mother. (*Martin* v. *Fisher*, 25 Ohio App. 372 [158 N.E.
287] ; *In re Connolly*, 154 Misc. 672 [278 N.Y.S. 32] ; *Mitchell*
v. *Auto etc. Underwriters*, 19 Cal.2d 1 [118 P.2d 815, 137
A.L.R. 923] ; *In re Johnson*, 98 Cal. 531, 543 [33 P. 460,
21 L.R.A. 380, 539].)

    The next point presented by appellants involves
the admission of certain evidence given at the former trial
by the witness Scott. That witness was there called and
testified for the contestant. At the time of the second trial
she could not be located. One of the counsel for contestant
testified in this action that two weeks before the second trial
he began and made a very diligent search for the witness
Scott and this search continued up to the time of trial; that
he was unable to locate her to serve a subpoena upon her
which he then had in his possession; that the only informa-
tion he had as to her whereabouts was that one or two of
the several persons he contacted who knew her "understood
she was going to San Francisco." The other persons said
they did not know where she went. The trial court then
admitted the testimony of that witness taken at the former
trial, over objection. Error is claimed in so doing, citing
*Butcher* v. *Vaca Valley Railroad Co.*, 56 Cal. 598, and *Meyer*
v. *Roth*, 51 Cal. 582.     The question whether a witness has
departed "from the jurisdiction of the court" is generally
a question of fact. (*Cameron* v. *Ah Quong*, 175 Cal. 377
[165 P. 961].)     Assuming, under the cases cited by appel-
lants, that the court committed error in admitting the evi-
dence of the witness under the showing made, those cases
were both decided before the adoption of section 4½ of article
VI of our Constitution.

    In *People* v. *Weston*, 169 Cal. 393 [146 P. 871], the
effect of failure to comply strictly with section 686 of the
Penal Code in reference to due diligence in endeavoring to
locate a witness was considered in connection with the con-
stitutional amendment. Irrespective of the question of due

diligence it was there held, as we must hold here, that the evidence admitted was only cumulative, and the other evidence properly received was sufficiently convincing of the undue influence on the part of the proponents that we cannot say the error, if any, resulted in a miscarriage of justice or that the verdict rendered probably would have been different had the deposition not been admitted.

The trial court made certain remarks during the trial which appellants claim were prejudicial. Several remarks were made which would have been better unsaid or made in the absence of the jury. These comments included such as a suggestion to counsel for one of the appellants that he was inclined to "impede progress in the path of justice," etc. We have examined the record in this respect and we cannot hold the remarks prejudicially erroneous. (*Lewis* v. *Crenshaw,* 47 Cal.App. 781 191 P. 72].)

Appellants complain of certain instructions given by the court bearing on the question of the burden of proof being on the proponents to show that no undue influence was practiced upon the deceased, if the jury concluded they were occupying a fiduciary relationship toward her. Several instructions were offered and given on this subject. Some of these instructions lack all of the necessary elements in stating the correct rule. One instruction, after telling the jury that the burden of proof was at all times upon the contestant to prove his or her case by a preponderance of the evidence, but "that burden may shift to the proponent to show by a *preponderance of the evidence that he is right.*" Similar instructions in reference to the shifting of the burden of proof and placing the burden on the proponent to show "by a preponderance of the evidence" that the presumption has been overcome, have been condemned and also held to be erroneous.

In *Estate of Erickson,* 140 Cal.App. 520 [35 P.2d 628], it was held that when the circumstances raise the presumption that a will was procured by undue influence, the proponents have the burden of meeting that prima facie case, but it is sufficient if they produce just enough evidence to counterbalance the prima facie case, and it is not necessary for them to prove the absence of undue influence by a *preponderance of the evidence.* (See, also, *Estate of Eakle,* 33 Cal.App.2d 379 [91 P.2d 954].) The term "burden of proof" is used in different senses. Sometimes it is used to

signify the burden of making or meeting a prima facie case, and sometimes the burden of producing a preponderance of the evidence. (*Scott* v. *Wood*, 81 Cal. 398 [22 P. 871]; *Bonneau* v. *North Shore Railroad Co.*, 152 Cal. 406 [93 P. 106, 125 Am.St.Rep. 68]; 10 Cal.Jur., p. 782, § 88, et seq.)

Proponent and appellant Houghtaling offered and the trial court gave (with some modification), an instruction on this subject. It read in part: "In civil actions the party who asserts the affirmative of an issue must carry the burden of proving it. . . . This means that if no evidence were given on either side of such issue your finding as to it would have to be against that party. When the evidence is contrary, the decision must be made *according to the preponderance of evidence. . . .*"

The trial court did, in the instant case, either directly or indirectly, throughout the instructions tell the jury that the presumption of undue influence, where a confidential relationship existed, "may be overcome" or "may be dispelled"; or that "in the absence of rebuttal the presumption is conclusive"; or that "presumptions must stand if not rebutted" or that "it devolves upon the proponent to explain the disposition expressed to be made of the estate by producing evidence to show that in fact the contestant was not, and that he himself was, an object of the decedent's bounty"; or that "it is up to you to say whether or not the long continued exception sufficiently rebuts the presumption that arises from the failure to recognize the moral claim of her daughter"; or "each of said presumptions is disputable and may be controverted by other evidence."

Appellants offered no other instruction setting forth the correct rule as to the burden of meeting the prima facie case where the presumption of undue influence had been established. If appellants desired a further instruction to be given on the issue they should have requested it. (*Daniel* v. *Asbill*, 97 Cal.App. 731, 739 [276 P. 149]; *Richmond* v. *Moore*, 103 Cal.App. 173, 181 [284 P. 681].)

In view of the evidence in this case and under the circumstances here presented, we are not inclined to hold the particular instruction complained of prejudicially erroneous. (*Lonnergan* v. *Stansbury*, 164 Cal. 488 [129 P. 770]; *People* v. *Tomlinson*, 66 Cal. 344 [5 P. 509]; *Estate of Graves*, 202 Cal. 258 [259 P. 935].) The trial court also fully con-

sidered this question on a motion for new trial and came to the same conclusion.

A judgment may be reversed for the giving of erroneous instructions only when the rights of the complaining party have been prejudiced and it is the general rule that such action will not be taken by an appellate court for error in modifying or in giving instructions if the verdict is manifestly right upon the evidence, and the error complained of has not resulted in a miscarriage of justice. (Art. VI, § 4½, Constitution.)

During the course of the trial the trial court read a portion of the decision of this court rendered on the last appeal bearing on the law of the case. The trial court fully instructed the jury, at appellants' request, on its limited purpose. No error resulted. (*Estate of Spencer*, 96 Cal. 448 [31 P. 453].)

In appellant Bolton's petition for rehearing it is argued that this court failed to fully consider the question whether he was a contestant at the second trial of this action, in view of the fact that a nonsuit was granted at the first trial. Bolton did not appeal from that order. The order granting the nonsuit was reversed. He contends that the judgment against him became final and therefore he was no longer a contestant. The record in this respect is not clear. A determination of this question is not material to the decision here. Bolton complained bitterly because he was called as an adverse party under section 2055 of the Code of Civil Procedure, cross-examined, and the verified allegations of his petition in reference to the competency of Mrs. Hampton were used against him for impeachment purposes. He contended he was not a contestant and therefore was not subject to cross-examination under that section. In the first place, the evidence discloses that Bolton and Bertha Houghtaling entered into an agreement about June 20, 1938, wherein Bolton agreed to dismiss his contest and any action pending against the estate in consideration of a goodly portion of the estate as a compromise or settlement. Houghtaling petitioned the court to allow such a compromise or settlement. There was no disposition made of the petition. Regardless of the fact of the court's ruling on the motion for nonsuit on the previous appeal as to Bolton's contest, he could not say at the second hearing wherein he was still a proponent of one will under this consolidated action and

a beneficiary under the compromise agreement above mentioned, that he was not a "party to the record of any civil action or proceeding or a person for whose immediate benefit such action or proceeding is prosecuted or defended" and therefore not subject to be cross-examined under section 2055 of the Code of Civil Procedure.

It was next claimed in appellant's petition for a rehearing that Hazel L. Sliff was estopped from denying the validity of the adoption decree because she never questioned its validity until the time of the present action, citing *Slattery* v. *Hartford-Connecticut Trust Co.*, 254 Mich. 671 [236 N.W. 902, 904]. In that case the mother of the child had custody of it and freely consented to its adoption. The child, at the age of seven years, also signed his consent to the adoption in writing. He had knowledge of the adoption 29 years before his attack upon it and 21 years after he attained majority. During that period he was a resident of the county where the adoption decree was granted. The court held that the child, 35 years after the decree was entered, was estopped to question the validity of the decree because the probate court had jurisdiction of the subject matter and to make an adjudication. In the instant action the record discloses that Hazel L. Sliff, at the the time of the claimed adoption, was about 4 years of age, and by reason of her minority was at that time *non sui juris*. She did not and could not participate in any proceedings before the courts. Her mother was then her natural guardian and remained so until such time as she might be removed from her trust by proper judicial action after notice and hearing on the charges made as to her unfitness to retain such trust. There is no evidence that Katherine Hampton ever knew of or received any notice of the adoption proceedings. It is apparent the child, Hazel L. Sliff, did not know of the proceedings or their effect. The evidence shows that Hazel L. Sliff came to California in 1902 where she resided with the Parkers and that it came as a surprise to her to learn, for the first time, during the second trial of the contest, of the adoption proceedings that were had. The evidence does not show any actions on her part that would preclude her from now questioning the validity of those proceedings on the ground of lack of jurisdiction under the doctrine of estoppel. It has been recently stated in *Mitchell* v. *Auto etc. Underwriters, supra,* that:

"It is elementary that, in the absence of some ground of estoppel, parties and their privies may collaterally impeach a judgment void on its face for lack of jurisdiction. . . . This right does not depend upon any showing of prejudice to their interests. As to strangers to the record, however, a different rule obtains. They may attack a void judgment only when, if the judgment were given full effect, some right in them would be affected by its enforcement." (See, also, *In re Johnson, supra; In re Connolly, supra; Martin* v. *Fisher, supra.*)

Appellants, strangers to the blood of Katherine Hampton, and acquaintances of but a few months, failed to convince the jury and the trial court of their good faith, and that the purported wills offered by each of them for probate were the free and voluntary testamentary acts of Katherine Hampton. They requested the court to confer legality upon a claimed adoption proceeding brought by the Parkers in 1901 in Kansas, without the knowledge of respondent and without notice, either actual or constructive, to the mother, so that they might gather the fruits of their efforts notwithstanding the verdict of the jury condemning the means employed by them in procuring the execution of the purported wills by the decedent. Due process and justice should not now allow appellants, who are strangers to the claimed adoption proceedings, to use that record as a purge to remove from their cause the undue pressure which the jury found they imposed upon decedent to secure the execution of the purported wills they seek to have admitted to probate in these proceedings.

We have examined the record in respect to the other claimed errors. They do not merit further consideration.

The judgment and orders are affirmed. Respondent to recover costs on appeal.

Barnard, P. J., and Marks, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 15, 1943. Gibson, C. J., Traynor, J., and Schauer, J., voted for a hearing.