[Civ. No. 13687. First Dist., Div. One. June 30, 1948.]

Estate of EDWARD R. MARTIN, Deceased. JOHN R. CROSS, Appellant, v. PATRICIA M. O'CONNOR, Respondent.

Robert E. Hatch for Appellant.

Bernal & Bernal for Respondent.

PETERS, P. J.—This is a companion case to *Estate of Smith*, 1 Civ. 13459, *ante*, p. 456 [195 P.2d 842], this day

decided, and the law stated in that opinion need not be here again set forth.

In the instant case the respondent is the daughter of the deceased, and the appellant is his brother. Admittedly, if respondent is entitled to inherit as a daughter, she is entitled to the estate to the exclusion of the appellant. It was the theory of the appellant in the trial court, and it is his theory here, that respondent is not entitled to inherit as a daughter of the deceased because, so it is contended, she was adopted out of the family of the deceased in 1910 by a decree of adoption rendered by a Minnesota court. The trial court ruled that the adoption decree was ineffective as to respondent because it shows, on its face, that the father of the child was given no notice of the proceeding. Based upon this determination, the trial court, by its decree of final distribution, awarded the entire estate to respondent. From this decree the brother appeals.

In all essential details this case is governed by the rules announced in the *Estate of Hampton,* 55 Cal.App.2d 543 [131 P.2d 565]. That case has been fully discussed in *Estate of Smith* (*ante,* p. 456 [195 P.2d 842]), and what was there said need not be here repeated. Suffice it to say that the Hampton case held that, if an adoption proceeding shows, on its face, that no service was had on one of the parents, the child purported to be adopted collaterally may attack the decree. Those rules are controlling here.

The record shows the following: Respondent was born in July, 1902, in Minnesota, and was then named Mabel I. Cross. Her mother died in March, 1903. Her father was Roy H. Cross. He later assumed the name of Edward R. Martin. It is his estate that is here involved. The father abandoned the child in 1902. Subsequently, in 1910, a guardian was appointed for the child, and the grandmother of the child purported to adopt her. It is the validity of those proceedings that is here involved.

The record shows that on the petition of Julia R. Britton, respondent's grandmother, filed in Minnesota and dated June 17, 1910, one F. J. Britton was appointed guardian of the respondent. The order appointing the guardian is also dated June 17, 1910. The petition for adoption is undated, but the affidavit of the petitioning party attached thereto is dated June 8, 1910. It alleges the abandonment of respondent by the father of the child in October, 1902. Attached is a con-

sent of the guardian, F. J. Britton, by which such guardian purported to consent to the grandmother adopting the child. The consent is not dated, but the certificate of the notary before whom it was executed is dated June 20, 1910. The adoption order is dated June 20, 1910. It recites that the father abandoned the child in 1902; that F. J. Britton had been appointed guardian of the child on June 17, 1910, and that the grandmother desires and has consented to adopt the child.

From this record, when the pertinent dates are considered, together with the allegations in the various documents, it appears, on the face of the record, that the real father of the child was given no notice, actual or constructive, of either the adoption proceeding or of the guardianship proceeding upon which the adoption was predicated.

It is admitted that the applicable Minnesota law, in effect at the time of the adoption, provided that when a parent had abandoned his child, or could not be found, the consent of such parent to an adoption was not indispensable, but that, in such events, a duly appointed guardian could give the required consent. In reference to the guardianship proceeding, the law provided that a guardian of the estate or person of a minor could be appointed whenever it should appear to the court necessary or convenient. The law required service upon the minor at least 14 days prior to the hearing. There was also a statute relating to dependent, neglected and delinquent children which permitted any citizen to file a petition to have ·a destitute, homeless or abandoned minor under 17 so declared. The petition had to set forth the names and addresses of the parents, if known, but if the parents were dead or their addresses unknown, then the name and address of the guardian was all that was required. Summons could then issue to anyone having custody of the child, and was to be served as a summons in a civil action. It was expressly provided that the parents of the child, if living and if their addresses were known, or the child's legal guardian, if one had been appointed, or if there were no parents or if their residences were unknown, or if there was no guardian, then some relative whose address was known, must be notified of the proceedings. If, on the hearing, the court determined that the child was dependent or neglected, it was empowered to commit the child to the care of a citizen or of some suitable institution. The person or institution to whom such child was

given was then authorized to give assent to an adoption of such child.

In the present case it is apparent that the guardianship order was the basis of the adoption decree. The guardian, F. J. Britton, then consented to the adoption. The petition for the appointment of the guardian and the order of appointment are both dated June 17, 1910. Thus it is clear, from the face of the record, that Roy H. Cross (the decedent) was given no actual or constructive notice of that proceeding. In fact, on the printed form of the guardianship order there is a printed provision reciting those upon whom service has been made, but the court struck those "notice" provisions from its order.

Under the rule of the Hampton case, *supra*, even if the applicable Minnesota law did not require notice to the absent parent, such notice was indispensable under the due process clause so far as the parent was concerned. The parent not notified, or, under the rule of the Hampton case, the child, is entitled to raise that constitutional defect. In the Hampton case the parties used the device of having the child declared abandoned, and given into the custody of an institution so that it could consent to the adoption. The mother was not notified of that proceeding. In the present case the parties used the device of having a guardian appointed so that the guardian could give the required consent. But the father was not notified. Under such circumstances there is no escape from the conclusion that the rule of the Hampton case permits the child to attack the validity of such an adoption proceeding.

The decree appealed from is affirmed.

Ward, J., and Bray, J., concurred.