[Civ. No. 13540. Third Dist. Jan. 3, 1973.]

Estate of LAURA B. O'DEA, Deceased.
LAURA I. FARASCHUK, Petitioner and Appellant, v.
STELLA IRENE SHAW, as Administratrix, etc., Objector and
Respondent.

760

## COUNSEL

Emmett J. Foley for Petitioner and Appellant.

Guidotti & Mellana, Aldo P. Guidotti and Charles A. Lee for Objector and Respondent.

## OPINION

MORONY, J.*—Mrs. Laura I. Faraschuk (hereafter "petitioner") filed a petition (later amended) for determination of heirship in the matter of the estate of Laura B. O'Dea, also known as Laura Belle O'Dea, deceased, being probated in the Superior Court of El Dorado County, California. The court, sitting without a jury, entered judgment decreeing that petitioner had no interest, as an heir or otherwise, in said estate; this is an appeal therefrom.[1]

---

*Assigned by the Chairman of the Judicial Council.

[1]There were two petitioners in the trial court. One was Laura I. Faraschuk and the other her brother, James Gordon Conlin. The judgment decreed that he also had no interest, as heir or otherwise, in the estate and would take nothing, but he has not appealed. However, during the oral arguments before this court, petitioner's counsel stated that there was a private contract between petitioner and her brother concerning this matter.

## A. FACTS

1. Petitioner was born on May 16, 1930, in Edmonton, Alberta, Canada, the natural offspring of Laura Belle Hardekopf (hereafter "decedent") and Herbert Isaac Conlin, who had been married in Edmonton on May 2, 1925.

2. Mrs. Stella Irene Shaw (hereafter "respondent") is the administratrix of the decedent's estate. Mrs. Shaw and her two brothers, Lewis V. Hardekopf and Herman Hardekopf, are the surviving siblings of decedent who, on September 16, 1968, died intestate in El Dorado County, California.

3. A separation agreement dated March 21, 1935, was entered into between petitioner's parents whereby "the said Laura Belle Conlin shall have the sole control and custody of the infant children, James Gordon Conlin and Laura Irene Conlin during their minority, free of the authority of Isaac Conlin . . . ." The agreement further provided for the payment of child support by the father to the mother.*

4. Decedent was an American citizen. This citizenship she retained throughout her marriages[2] and to the date of her death. Following her separation from Conlin, she and her two children returned in 1935 to the United States and located in the Los Angeles-Pasadena area. Thereafter, the Relief Department of Alberta, Canada, had the children returned to their father in Canada after receiving adverse reports from the Los Angeles probation officers concerning the mother's behavior. Apparently, the children were with their father during part of 1936, 1937 and part of 1938.

5. By a judgment entered on December 4, 1936, the Conlin marriage was dissolved in Canada by the Supreme Court of Alberta, Judicial District of Edmonton; at that time, the court awarded to the father the custody and control of the two infant children (petitioner and her brother). This decree nisi was made absolute by a decree entered on March 25, 1938.

6. Subsequently, upon a complaint being made, petitioner was apprehended as a neglected child. On November 4, 1938, a juvenile court in Alberta, Canada, declared her to be a neglected child and made her a permanent ward of its Superintendent of Child Welfare.[3]

---

*All of the various court orders from Canada, the Canadian legislative act and other documents referred to herein were before the trial court as exhibits and are now before this court.

[2]Following the dissolution of her marriage to Conlin, decedent remarried. Her second husband, John Doe O'Dea, predeceased her.

[3]The wardship order was made pursuant to the provisions of the Child Welfare Act, 1925, as amended by the 1935 Statutes, chapter 19.

7. On June 4, 1940, the Northern Alberta District Court (Wetaskiwin Judicial District), Canada, made its order declaring petitioner to be the adopted child of Frank and Christine Monsson. Petitioner had resided in the Monsson's home since November 1938. On March 6, 1944, Frank Monsson died leaving his estate to his wife Christine. Then on July 31, 1948, Christine Monsson died leaving her estate to a nephew with the exception of $1,000 bequeathed to petitioner. Shortly prior to Mrs. Monsson's death, petitioner had married Nicholas William Faraschuk at Thorsby, Alberta, on May 26, 1948.

8. Petitioner first learned of decedent's residency in El Dorado County, California, some two days after her death. This information was transmitted to her by Lieutenant Duncan of the Placerville Coroner's Department. Petitioner had had no contact with her natural mother since 1936. She has spent her entire life in Canada with the exception of the last four years in Colfax, Washington. However, she still retains her Canadian citizenship. Through the years petitioner had made numerous unsuccessful attempts to locate her natural mother. She corresponded and visited with respondent (her maternal aunt) and with Lewis and Herman Hardekopf (her maternal uncles), who remained in Canada. Respondent had come to the United States sometime prior to 1936 and located in Azusa, California, until 1943, when she moved to Chowchilla, California. During this period of American residency she acquired American citizenship. When decedent came to California with her two children, following her marital separation, she visited for some three months in 1936 with respondent in Azusa. That was the last contact that respondent or her brothers had with decedent; apparently they did not know of her whereabouts until informed of her death. Hence, they were unable to assist petitioner in her efforts to locate her mother.

9. Following the death of her mother in 1963, petitioner engaged an attorney in Edmonton, Alberta, Canada, to take steps to set aside her adoption. Consequently, on August 14, 1969, a petition was filed on her behalf in the Northern Alberta District Court, Edmonton Judicial District, Canada, seeking a declaration that the order of adoption (by which petitioner was adopted by the Monssons) was a nullity. The petition prayed for an order:

"1. Declaring the aforesaid Order granted C. L. Clough, Judge of the Juvenile Court null and void as having been made without jurisdiction, no notice of the proceedings having been given to either parent or legal guardian as required.

"2. Declaring the aforesaid Adoption Order granted by His Honour Judge Bury void *ab initio* as having been made without the consent of the parents or guardians of the Petitioner or any other person having lawful authority to give such consent."

This petition was summarily dismissed on August 20, 1969, without any comment or reason appearing in the record of the court proceedings for that day.

10. Upon the dismissal of the petition in the district court, petitioner then filed a similar petition in the Supreme Court of Alberta, Judicial District of Edmonton, Canada. This petition likewise was dismissed by the court by order entered on December 4, 1969. However, Mr. Justice W. J. C. Kirby stated his reasons for judgment as follows: "The Court is precluded from considering the merits of the petition by reason of the provisions of Section 62(1) of The Child Welfare Act, 1966, which provides: '62.(1) No action or proceeding to set aside an order of adoption shall be commenced after the expiration of one year from the day of the order, except on the ground that the order was procured by fraud and then it may only be set aside if it is in the interests of the adopted child to do so.' There is no evidence of the Order of Adoption having been procured by fraud. The petition is accordingly dismissed."

A notice of appeal from this order was filed by petitioner on December 9, 1969. However, the appeal was discontinued by document filed April 21, 1970. Obviously the appeal was abandoned because of the private bill, next to be mentioned, passed by the Legislative Assembly of the Province of Alberta, Canada, which became effective on April 15, 1970.

11. Petitioner, through her Canadian counsel, then took the matter to the 1970 Legislative Assembly of the Province of Alberta, Canada. There was introduced in the Third Session, 16th Legislature, 19 Elizabeth II, private Bill No. 4, entitled "An Act respecting Laura Irene Faraschuk (nee Conlin) and the Estate of Laura Belle Conlin O'Dea, deceased." The bill was read three times, to wit: On March 13, 16 and April 15, 1970. Petitioner was personally present at the second hearing as well as her two maternal uncles who appeared with their counsel in opposition to this private bill. The Legislative Assembly passed this private bill declaring that the order, by which petitioner was adopted by the Monssons, was void *ab initio*. Because of its legal importance in this case, this legislative enactment is now quoted at length:

"BILL Pr. 4

"1970

"An Act respecting Laura Irene Faraschuk (nee Conlin) and the Estate of Laura Belle Conlin O'Dea, deceased

"(Assented to April 15, 1970)

"WHEREAS Laura Irene Faraschuk by her Petition represented that she was made a permanent ward of the Superintendent of Child Welfare without due process of law;

"AND WHEREAS subsequently an Order of Adoption of the Petitioner was made without the consent of her natural parents or guardian or any other person having lawful authority to give such consent;

"AND WHEREAS the law of inheritance at the time such Order was made provided that an adopted child inherited from its natural parents, which right of inheritance was subsequently extinguished by retroactive legislation;

"AND WHEREAS by reason of the lapse of time the said Order of Adoption can no longer be appealed against;

"AND WHEREAS it is expedient and in the interest of the Petitioner that the said Order of Adoption be declared to have been made without jurisdiction and the adoption of the Petitioner ordered thereby to be and always to have been *void ab initio*;

"THEREFORE, Her Majesty, by and with the advice and consent of the Legislative Assembly of the Province of Alberta, enacts as follows:

"1. The said Laura Irene Faraschuk is hereby declared always to have been and now to be the lawful child of her natural mother, Laura Bell [*sic*] Conlin O'Dea, deceased, and the said Adoption Order is declared always to have been and to be *void ab initio*; having been made without jurisdiction.

"2. The said Laura Irene Faraschuk is hereby declared always to have been and now to be the lawful heir of the said Laura Belle Conlin O'Dea and successor to the estate and property of the said Laura Belle Conlin O'Dea, deceased, together with all the rights and privileges as set forth in *The Intestate Succession Act,* being chapter 161 of the Revised Statutes of Alberta, 1955 and amendments thereto, as if the aforesaid Order of Adoption had not been made.

"3. This Act comes into force on the day upon which it is assented to."

12. Subsequently an application was made by petitioner to the Supreme Court of Alberta, Edmonton Judicial District, Canada, requesting that the applicable vital statistical records be amended to read as though the June 4, 1940, order of adoption had not been made. On May 6, 1970, Mr. Justice A. M. Dechene made and entered an ex parte order as follows: "1. IT IS HEREBY DECLARED that the said Order of Adoption is void *ab initio* and that the Applicant, Laura Irene Faraschuk (nee Conlin) is the natural and lawful child of Isaac Conlin and Laura Conlin.

"2. AND IT IS ORDERED that the particulars on file at the Division of Vital Statistics of the Department of Health of the Province of Alberta with respect to the registration of marriage of Laura Irene Conlin to Nicholas William Faraschuk be amended accordingly."

On October 15, 1970, the Canadian counsel for respondent and her two brothers filed a noticed motion to set aside, or, in the alternative, to vary the wording of the May 6, 1970, ex parte order. This motion or application was denied by Mr. Justice A. M. Dechene by an order entered on March 19, 1971, reciting, inter alia: "AND UPON it appearing that the said Order of May 6, 1970 was not a judicial decision that the Order of Adoption mentioned therein was void *ab initio* but was a direction to the Division of Vital Statistics to conform to that certain statute of the Province of Alberta being Chapter 120 of the Statutes of Alberta, 1970, entitled: An Act respecting Laura Irene Faraschuk (nee Conlin) and the Estate of Laura Belle O'Dea, deceased.

"IT IS ORDERED, ADJUDGED AND DECLARED that the application of the Applicants be and the same is hereby dismissed with costs."

### B. TRIAL COURT'S FINDINGS AND CONCLUSIONS

The trial court made findings essentially in accordance with the facts as herein recited. The facts as found by the trial court are not challenged on this appeal. Based upon these facts the trial court concluded as a matter of law that:

1. Petitioner had not affirmatively proved that the adoption decree was void; therefore, the adoption could not be set aside.

2. Petitioner had not affirmatively proved that the abandonment proceeding was invalid; therefore, the adoption could not be set aside.

3. The private bill passed by the Alberta Legislature could not be recognized by the court for the purpose of making petitioner an heir of the estate of Laura B. O'Dea.

4. The private bill is ultra vires in Alberta itself in that it is in derogation of property and civil rights outside that province and overturns a prior judicial decision within that province.

5. Petitioner is barred from setting aside the adoption by the California statute of limitations (Civ. Code, § 227d).

6. Petitioner is barred from setting aside the adoption by the Alberta statute of limitations (Child Welfare Act (1966) § 62(1)), as applied by the Alberta Supreme Court in its order entered December 4, 1969.

7. Petitioner is estopped from setting aside her adoption.

8. Respondent should therefore have judgment against petitioner and petitioner should bear respondent's costs of suit.

9. Petitioner has no interest, as heir or otherwise, in the estate of Laura B. O'Dea.

## C. Contentions

On appeal, petitioner has raised the following contentions:

1. The adoption of petitioner is void in Canada because of a valid legislative act and final Canadian court decision.

2. The California courts must recognize and give effect to the legislative act and final Canadian court decision voiding the adoption, and it follows that petitioner as the natural daughter of the deceased is an heir under California law.

3. The California statute of limitations barring a proceeding to set aside adoption (Civ. Code, § 227d) is inapplicable to this case, and the Canadian statute of limitations is likewise inapplicable to this proceeding.

4. Petitioner was not and is not estopped from setting aside her adoption.

## D. The Judgment Is Contrary To Law

The judgment, from which petitioner has appealed, is not supportable by the law as applied to the undisputed facts.

*1. Petitioner has established that her adoption is void in Canada.*

The order for adoption of petitioner was made pursuant to the provisions of section 39(1) of the Domestic Relations Act, chapter 5, Statutes of Alberta, 1927, which provided: "39.(1) An order for adoption shall not

be made, except as hereinafter provided,[4] without the consent of the child, if he has attained the age of fourteen years, and of his lawful guardian or guardians."

The record is very clear that petitioner's natural parents were neither notified of the adoption proceedings nor were their consents obtained. Petitioner's consent was not required because she was then only 10 years of age. Mr. T. R. Blaine, as legal guardian in his capacity as Superintendent of Child Welfare for the Province of Alberta, consented to the adoption. However, if the Superintendent of Child Welfare was without valid authority to consent, then the order of adoption was made contrary to law. He derived his authority, if any, solely by virtue of the November 4, 1938, juvenile court order declaring petitioner to be a neglected child and making her a permanent ward of the Superintendent of Child Welfare for the Province of Alberta.

This wardship order was made pursuant to the provisions of The Child Welfare Act, 1925, as amended by 1935 Statutes, chapter 19, of which the relevant provisions were: "7.(1) Any person who has apprehended any child pursuant to section 6 hereof or any other person duly authorized by the Superintendent or the Superintendent shall serve a notice in form 4 upon the parents or guardian of the child or the person or persons having the actual custody of the child at the time of his or her apprehension and upon the municipality to which such child belongs, stating the time and place for investigating the facts of the case, which time shall not be less than ten days after the apprehension of the child, unless otherwise ordered by the judge, and the intention to apply to a judge for an order against the municipality to which such child belongs for the expenses including medical and hospital treatment, and the maintenance and support of such child, including necessary clothing, from the date of apprehension of such child so long as such child remains in the care and custody of a society or of the Superintendent or in an industrial school or other institution approved by the Lieutenant Governor in Council.

"․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․

"(4) The judge shall not proceed to hear and dispose of the matter until he is satisfied that the parents or guardian or the persons having the actual custody of the child and the municipality to which the child is deemed to belong have been notified of the investigation, or that every reasonable effort has been made to give such notification."

---

[4]The exceptions provided for in the statute do not affect this record. Mr. Justice Kirby in his "Reasons for Judgment" made no mention of any applicable exceptions.

Here again, the record is clear that neither petitioner's mother nor her father, who then had her legal custody, was given any notice of the proceedings to have petitioner declared a neglected child and made a ward of the court. Furthermore, the record is devoid of any evidence that any effort, reasonable or otherwise, had been made to give such notification. Nevertheless, the court proceeded to hear and dispose of the matter contrary to law. Hence, since the order committing petitioner as a permanent ward of the Superintendent of Child Welfare was a nullity, it follows that the order of adoption likewise was a nullity, the superintendent having no authority to consent to it. It is readily apparent that the courts handling the wardship and adoption matters lacked jurisdiction to do so because of the total absence of compliance with the notice requirements of the Canadian law. Stated in terms of our own jurisprudence, there was a lack of due process of law. (*Estate of Hampton* (1942) 55 Cal.App.2d 543, 552-563 [131 P.2d 565].)

It was on this basis that petitioner filed in the Alberta District Court a petition to have the adoption order declared void *ab initio*. This was summarily dismissed by the court, whereupon petitioner filed a like petition in the Alberta Supreme Court. Although the latter court likewise denied the petition, it specifically stated that it was *"precluded from considering the merits of the petition"* (italics added), because section 62(1) of the 1966 Child Welfare Act contained a one-year statute of limitations for setting aside an adoption order other than on the ground of fraud and there was no evidence of fraud in this case.

Consequently, the petitioner took her case to the Legislative Assembly of the Province of Alberta, which enacted a statute declaring the order of adoption void *ab initio* for the reasons stated in the preamble recitals thereof, to wit: (1) the wardship proceedings were without due process of law; (2) the adoption order was made without the required consents; (3) the Canadian law of inheritance had been changed in that when the order was made an adopted child could still inherit from the child's natural parents, but such right of inheritance had been subsequently extinguished by retroactive legislation; and (4) the court order could no longer be judicially appealed because of the lapse of time. The legal question then narrows down to whether this private statute is valid in Canada.

A study of the Canadian authorities compels the conclusion (a) that the Legislative Assembly for the Province of Alberta in Canada is empowered under Canadian law to enact valid and enforceable "private" statutes affecting the status of particular individuals under certain conditions, and (b) that

the statute (1970 Private Bill 4) which was enacted was within the conditions of exercise of such legislative power.[5]

The basis of the Canadian Constitution is the British North America Act which the Parliament of Great Britain enacted in 1867. Under section 91 thereof the Canadian Parliament is granted the power to make laws generally in relation to all matters not assigned exclusively to the legislatures of the province; and section 92 thereof sets forth the subjects on which those legislatures may exclusively make laws, e.g., property and civil rights, and generally all matters of a merely local or private nature (hence, adoptions because they affect status of persons).

The early case of *Re Goodhue* (1872) 19 Grant's Chancery Reports 366, distinguished between the power of the Canadian Parliament, or national legislature, and those of the provincial legislatures under section 92. It was pointed out that section 92 allowed provincial legislatures to legislate matters of a "private nature" affecting "private rights" within their jurisdiction. The court said (p. 452): "By section 92 of the British North America Act the exclusive power to legislate is, amongst other matters, conferred on the local legislatures as regards 'Property and civil rights in the Province, and generally in respect of all matters of a merely local and private nature in the Province.' It must be from one or the other of these sources that the power to pass private Acts of Parliament affecting private property is derived. That the Legislature have that power in all cases where the property and rights sought to be affected are 'in the Province,' to the same unlimited extent that the Imperial Parliament have in the United Kingdom, I have not the slightest doubt.

"In the distribution of the legislative powers just referred to, it must have been intended to confer the right of legislation in private matters and in matters of property and civil rights theretofore exercised by the Legislature of Canada, either on the Parliament of the Dominion or on the Provincial Legislatures, and there is nothing in the act shewing an intention to give any part of it to the Parliament. But the laws to be made by the Provincial Legislatures are confined to property, civil rights, and matters of a legal and private nature *in the Province,* so that, although no limitation is imposed as regards the extent to which the Legislature may in their discretion affect private rights within their jurisdiction, they are limited to dealing with rights and property within the Province. . . ." (Original italics.)

---

[5]"Private acts," affecting single individuals, are fundamental to English-based jurisprudence and are used in many American jurisdictions. (See 2 Sutherland, Statutory Construction (1943) §§ 4201-4204, pp. 301-302.)

There are other and later cases reaffirming the basic principle enunciated in the *Goodhue* case, e.g., the Supreme Court of Canada stated in *Bedard* v. *Dawson* and Attorney General for Quebec (1923) S.C.R. 681, 683, 4 D.L.R. 293, 295, 3 W.W.R. 412, 414, the following: "I have long entertained the opinion that the provincial legislatures have such absolute power over property and civil rights, as given them by section 92 of the B.N.A. Act, item 13 thereof, that so long as they did not in fact encroach upon the powers assigned by said Act to the Dominion Parliament it would be almost impossible to question any such exercise of power so given unless by the exercise of the veto power given by the Dominion Government."

The respondent argues that the Alberta Legislature had no right to "overturn a judicial decision" in order to affect the private rights of the parties. Reference is first made to the court's order denying the petition to set aside the order of adoption. However, this contention may be disposed of by pointing out that the court itself stated that it was not considering the petition upon its merits because it was precluded from doing so. Reference is next made to the fact that the statute was based on a legislative finding that the order of adoption earlier made by the original Canadian court was without jurisdiction because of lack of notice required by Canadian law, and the statute therefore declared the adoption void. The question is not whether the Alberta Legislature could "overturn" a judicial decision, although one incidental effect of the statute was to render the earlier decision ineffective. The question is actually one of the authority in Canada of a provincial legislature to enact a private bill affecting individual rights and status. Suffice it to say that such legislative power exists, and we have before us at present a particular act already passed by the Alberta Legislature and approved by a Canadian court. It was so held when the Alberta Supreme Court adopted and augmented the statute.

When the Alberta Supreme Court was petitioned to declare the adoption void *ab initio* based upon the private statute and to have the vital statistical records corrected accordingly, the Canadian court was then under a duty to determine whether the private bill was an ultra vires act of the provincial legislature. *Goodhue, supra,* 19 Grant's Chancery Reports 452-453, is authority for this principle that: "Where limited legislative powers are conferred, it must always be the duty of every judicature, when called upon to expound and apply Statutes made in the exercise of such an authority, to inquire whether or not the bounds set by the sovereign Legislature have been exceeded."

Thus, if a provincial legislative body passes an act which involves a matter upon which the province has not been given the power to legislate,

the legislative act is necessarily ultra vires and the court in those instances would have not only the power but the duty to so declare.

If, on the other hand, a provincial legislative body passes an act involving a subject which is exclusively under the power of the province to act upon pursuant to section 92 of the British North America Act, then the court must necessarily find that the legislation is valid and not ultra vires.

We find in 4 Canadian Encyclopedic Digest, Western (2d ed.) page 452, the following: "*A court of law has nothing to do with a Canadian or provincial Act, lawfully passed, except to give it effect according to its tenor.* So far as it is a matter of wisdom or policy, it is for the determination of Parliament. Although from time to time the courts set aside, as void, transactions of individuals upon the ground that they are against public policy, no such doctrine can apply to an Act of Parliament. With the wisdom or expediency or policy of an Act, lawfully passed, no court has a word to say. Where a statute admits of but one interpretation effect must be given to it, whatever its consequences, since the cardinal principle of its construction is the supremacy of Parliament." (Italics added; fns. omitted.)

"There has been committed to Canada and the provinces thereof within the ambit of their respective powers, imperially conferred, the sovereign power of legislation. *If the* Parliament of Canada or *the legislatures of the provinces transcend these powers, the courts have the power to declare any such attempted statute law to be ultra vires,* but it is to this extent only that Her Majesty's courts of law have the power to review legislation." (*Id.* at p. 453.) (Italics added; fn. omitted.)

"The presumption is always in favour of the view that an Act of Parliament is constitutionally valid; and *provincial legislation is to be interpreted on the presumption that the legislature contemplated such matters only as were within its own powers.*

"A reasonable doubt must be resolved in favour of the legislative action, and the Act be sustained." (*Id.* at pp. 466-467.) (Italics added; fns. omitted.)

Hence, the holding of the Alberta Supreme Court is a judicial recognition of the validity of the legislative act declaring the adoption void *ab initio.*[6] Furthermore, the court's order was also an implementation of that legislative act in that the court, based on the act, declared petitioner was the lawful child of decedent and ordered certain records of the Division of Vital Statistics in Alberta revised accordingly.

---

[6]It is interesting to note that although respondent sought to have this order set aside by the Alberta Supreme Court, nevertheless, no action was brought in Canada attacking the validity of the legislative act in question.

Consequently, we hold that the petitioner has proved the adoption void *ab initio* under Canadian law.

■ 2. *The Canadian legislation and final court decision must be recognized as to petitioner's nonadoptive status.*

The trial court concluded that the private bill passed by the Alberta Legislature could not be recognized for the purpose of making petitioner an heir to the estate. In doing so, the court misconstrued the purpose of offering the bill (and the Canadian decision implementing it) into evidence. The purpose was not to make petitioner an heir by means of the Canadian law alone. The purpose was to establish that petitioner was the natural and lawful child of the deceased and had not been adopted by other persons in Canada. It is true that the Canadian bill or statute went beyond declaring the adoption void and stated that petitioner was the lawful heir and successor to the estate of Laura O'Dea. The court's finding was correct that the Canadian statute could not itself make petitioner an heir and successor to a California estate under California law. Canada, of course, has no jurisdiction to determine heirship and succession of a particular individual in a California court. However, Canada had jurisdiction over the adoption in Canada; that "adoption" was clearly void under Canadian law.

The status of adoption or lack of adoption as established by a foreign jurisdiction must be recognized in California under principles of either comity or full faith and credit. (*Estate of Morris* (1943) 56 Cal.App.2d 715 [133 P.2d 452]; Rest. 2d Conflicts of Law, § 290; 2 Witkin, Cal. Procedure (2d ed. 1970) § 49, pp. 924-925; 3 Witkin, Summary of Cal. Law (7th ed. 1960) pp. 2418-2419.) Thus, the Canadian statute (and the Canadian court decision) could and should be recognized, but only in determining that petitioner was not adopted by other persons in Canada. It would then follow that petitioner's heirship and right to succession, if any, would be determined under California law, not Canadian law.

It is true that California will refuse to recognize, and will allow collateral attacks on, adoptions in foreign jurisdictions if the same were obtained in violation of the due process clauses of our state and federal Constitutions. (*Armstrong* v. *Manzo* (1965) 380 U.S. 545 [14 L.Ed.2d 62, 85 S.Ct. 1187]; *Estate of Martin* (1948) 86 Cal.App.2d 474 [195 P.2d 839]; *Estate of Smith* (1948) 86 Cal.App.2d 456 [195 P.2d 842]; *Estate of Hampton, supra,* 55 Cal.App.2d 543.) It is a well-established policy of this state that notice and an opportunity to be heard are fundamental to jurisdiction. The

private statute enacted by the Alberta Legislative Assembly is not repugnant to such a policy; but, to the contrary, it is most consistent with our concept of due process.

Under rules of conflict of laws and principles of comity, the status of adoption is determined by the laws of the jurisdiction where the adoption was effected, and the rules of inheritance are determined by the laws of the jurisdiction of domicile of the decedent at time of death. (*Estate of Hebert* (1941) 42 Cal.App.2d 664, 665-666 [109 P.2d 729]; *Estate of Grace* (1948) 88 Cal.App.2d 956, 959 [200 P.2d 189].) Canada had jurisdiction of the matter of petitioner's adoption. There is a valid Canadian statute implemented by a Canadian court decision declaring that the petitioner is not an adopted person in Canada. These clear legislative and judicial expressions are entitled to recognition by the courts of California.

Respondent contends that even if the order of adoption was effectively set aside by the act passed by the Alberta Legislature, nevertheless, petitioner was an adopted child as of the date of decedent's death, so she is not entitled to inherit because the rights of heirs became vested as of that date. The cases of the *Estate of Hampton, supra,* 55 Cal.App.2d 543, and the *Estate of Martin, supra,* 86 Cal.App.2d 474, negate such a theory. These cases clearly indicate that California will allow a natural child to inherit from a natural parent even though the determination that the adoption was void was made after the date of death.

Therefore, unless barred by statutes of limitation or estoppel, the petitioner is entitled to her inheritance rights under the California laws of intestate succession. (Prob. Code, § 200 et seq.)

■ 3. *Neither the California nor the Canadian statute of limitation is applicable to this proceeding.*

The trial court erroneously concluded that petitioner was barred by both the California and Canadian statutes of limitation "from setting aside the adoption." The court based its conclusions as to the California statute of limitations on section 227d of the Civil Code, and as to the Canadian statute of limitations on section 62(1) of The Child Welfare Act, as applied by the first Alberta court decision entered on December 4, 1969.

We shall first examine the California statute of limitations referred to by the trial court. That statute (Civ. Code, § 227d) bars an action or proceeding of any kind in California to set aside or nullify an adoption unless it is brought within five years after entry of the decree of adoption. Respondent contends that the trial court was correct in applying this statute

to this case, on the theory that this case in the trial court was an action or proceeding to nullify an adoption. Such is not the fact. The action brought was an action for a determination of heirship to an intestate estate. It was not an action or proceeding to vacate or nullify an adoption. Moreover, the purported adoption which was incidentally a factor in the determination of heirship was not a California adoption. As pointed out hereinabove, the status of adoption (or lack of adoption) is determined by the laws of the state where the alleged adoption was effected.

This brings us to a consideration of the trial court's conclusion that the Canadian statute barred the "setting aside" of the adoption in California. Here again the error lies in the assumption that this was an action in which the California court was itself being asked to set aside the adoption. Respondent attempts to support the trial court's conclusion by pointing to the California law that when a statute of limitations in a foreign jurisdiction bars a cause of action which arose there, an action shall not be maintained thereon against a person in this state. (See Code Civ. Proc., § 361.) Respondent contends this rule bars the "setting aside" of the adoption because an action to set it aside had been declared barred by a Canadian court. This contention fails not only because the instant action is not one to set aside an adoption, but also because the decision of the Canadian court which applied the Canadian statute to bar the action in Canada was abrogated by a Canadian statute and a later Canadian court decision specifically setting aside the adoption. The Canadian statute of limitations did not apply to the proceedings in Canada and it consequently does not apply here.

4. *The theory of estoppel is not applicable to this proceeding.*

The trial court concluded that petitioner was estopped from "setting aside" her adoption. This was error. Respondent argues that an estoppel should be based on the facts that (a) petitioner waited for approximately 28 years before taking steps to set aside her adoption; (b) she accepted a testamentary bequest in 1948 from her alleged adoptive mother; and (c) she sought in her action to determine heirship to take from the estate of her natural mother to the exclusion of her own brother, who had also been adopted in Canada but was not a party to the legislative act or court nullification proceedings in Canada.

We reiterate that this is not an action to set aside or nullify an adoption in California. The adoption was set aside or nullified in Canada. We

have held hereinabove that the trial court should have recognized this valid Canadian legislative and judicial act.[7]

The judgment of the trial court as to petitioner Laura I. Faraschuk is reversed.

Richardson, P. J., and Janes, J., concurred.

A petition for a rehearing was denied January 31, 1973, and respondent's petition for a hearing by the Supreme Court was denied March 1, 1973.

---

[7]We do note parenthetically, however, that petitioner has pointed out that any facts which might be grounds for estoppel of proceedings to nullify the Canadian adoption could and should have been presented to the Canadian legislative body and the court which approved the legislative act. Both petitioner and her contending relatives were represented by counsel before the Canadian legislative body and before the Canadian court.