[No. G000294. Fourth Dist., Div. Three. Dec. 28, 1984.]

Estate of LOUIS WILLIAM HART, Deceased.
KEVIN LAW HART, Petitioner and Respondent, v.
SHEILA WIDOE, as Administratrix, etc., Objector and Appellant.

COUNSEL

Cohen, Stokke & Davis and James B. Andres for Objector and Appellant.

Gerald L. Klein and Erika W. Senter for Petitioner and Respondent.

OPINION

**SONENSHINE, J.**—Administratrix appeals a judgment on a petition to determine heirship. The trial court found Kevin Law Hart, adopted son of Robert Law, to be the heir at law of his natural father, Louis William Hart.

Kevin has not filed a respondent's brief "and thus rule 17(b) of the California Rules of Court is applicable to this appeal. It provides in pertinent part: '. . . the court may accept as true the statement of facts in the appellant's opening brief and, unless the appellant requests oral argument, may submit the case for decision on the record and on the appellant's opening brief.'" (*In re Marriage of Davies* (1983) 143 Cal.App.3d 851, 854 [192 Cal.Rptr. 212].) The administratrix requested oral argument. Although he filed no respondent's brief, Kevin's attorney was present and orally argued at that time. Additionally, he presented several documents to augment the record. We have examined the record, including its augmentation, and find the judgment must be reversed.

FACTS

Kevin Hart was born October 25, 1938, to Louis and Margaret Hart. The parents were divorced in Colorado in 1942 and Margaret was granted exclusive custody of Kevin.

Margaret later married Robert Oakley Law and in 1954 they filed an adoption proceeding in Oklahoma. The petition alleged the consent of Kevin's natural father was unnecessary because Margaret's divorce had been granted on the grounds of cruelty. Moreover he had thereafter neglected Kevin and failed to contribute to his support. On November 16, 1954, the Oklahoma court decreed Kevin to be the adopted son of Robert Oakley Law. Kevin, who was 16 years old at the time, executed a consent to the decree.

In 1979 Louis, while domiciled in California,[1] died intestate. His estate consists of California property as well as real property located in Colorado. Sheila Hart Widoe, decedent's daughter, was named administratrix.

After Kevin learned of Louis' death, he filed a motion in Oklahoma district court to vacate the adoption. He claimed the decree was void because his natural father was not given notice. His uncontested motion was granted. When Sheila learned of this order, she filed a motion in Oklahoma district court, on behalf of the estate, to vacate Kevin's order. This motion was also granted and Kevin appealed. The Oklahoma Court of Appeal affirmed holding that although the 1954 adoption decree was void, Kevin had only

---

[1] At the time of his death, Louis had three natural children: Kevin, Sheila Hart Widoe and Sharri Cory. Under California Probate Code section 200 et seq. Kevin, *unless his rights were cutoff by adoption*, would be entitled to share equally in the estate.

If Kevin is the legally adopted son of Robert Law he cannot take an intestate share of Louis Hart's estate because "[a]n adopted child does not succeed to the estate of a natural parent when the relationship between them has been severed by adoption, . . ." (Cal. Prob. Code, § 257.)

one year from his majority to challenge its validity. Pursuant to the Oklahoma statute of limitations, the decree became final as to Kevin in 1960. The court concluded the due process rights to notice of the adoption were the personal rights of Louis. Kevin therefore lacked standing to challenge the adoption on these grounds. Kevin petitioned to the Oklahoma Supreme Court which affirmed.

Kevin then filed a petition in California to determine heirship in Louis' estate. Our trial court found the 1954 Oklahoma adoption decree void and concluded it was not entitled to full faith and credit. It determined Kevin is the heir of his natural father and entitled to share equally with other children in Hart's estate and ordered a preliminary distribution of the California property. Finally, the trial court found a natural child takes intestate from his natural parent under Colorado law and purported to distribute one-third of Louis Hart's Colorado real property to Kevin.

I

We must decide whether Kevin is the legally adopted son of Robert Law. In this case there are two relevant judgments. The 1954 Oklahoma adoption petition decreeing Kevin is the adopted son of Robert Law and the 1982 decision of the Oklahoma Supreme Court upholding Kevin's adoption. If we are bound by the latter we cannot rule on the former. "Under the United States Constitution, each state must give full faith and credit to the judicial proceedings of every other state. (U.S. Const., art. IV, § 1.) In California, the constitutional requirement is reflected in Code of Civil Procedure section 1913, which provides that the effect of a judicial record of a sister state is the same in this state as in the state where it was made." (*Tyus v. Tyus* (1984) 160 Cal.App.3d 789, 792 [206 Cal.Rptr. 817].) Therefore, we first consider the scope, validity and legal effect of the 1982 decision.

The Oklahoma Supreme Court affirmed the court of appeals holding that "Forty-three-year-old son appeals from [*sic*] order vacating his 1954 adoption by his natural mother and her husband. The end result of this activity is that the adoption stands." (*Matter of the Adoption of Kevin James Hart* (1982) No. 55, 544, affd. Okla. Supreme Ct., May 21, 1982.)[2]

---

[2]The Oklahoma judgment reads as follows: "Forty-three-year-old Son appeals from order vacating an order entered in December, 1979, vacating his 1954 adoption by his natural mother and her husband. The end result of this activity is that the adoption stands.

"Son is the natural child of Louis W. Hart and Margaret Helen Law, who were divorced in Colorado in 1941. The mother married Robert Oakley Law sometime later and in 1954 they filed an adoption proceeding. The petition for adoption alleged the natural father's consent was unnecessary because the natural parents' divorce was granted on the statutory ground of cruelty. It further alleged long-standing nonsupport on the part of the natural father. The decree of adoption found these allegations to be true. No mention was made of

Our inquiry into the validity of this judgment is very narrow. "California opinions have expressed the rule as follows: ▇ '[T]he law is well estab-

'notice.' Son was 16-years-old at the time and executed a consent to the proceedings.

"Twenty-five years later, after learning of his natural father's death in California, Son filed a motion to vacate the adoption claiming the decree was void for lack of notice to his natural father. (Fn. 1.) The motion was granted and the executrix of the deceased natural father's estate then filed a motion to vacate that order, which was also granted. It is from this second vacation order that Son now seeks redress.

"On appeal, Son alleges lack of notice to his natural father renders the adoption decree void. We find it does, but find the decision rendered below to be correct in spite of that fact and affirm.

"At the time the decree was entered, 10 O.S.1951 § 44 read, in pertinent part: [A] legitimate child cannot be adopted without the consent of its parents, if living . . . except that consent is not necessary from a father . . . adjudged guilty of . . . cruelty, or for [such] cause divorced . . . or who has been judicially deprived of the custody of the child on account of cruelty . . . . There was no statutory provision in effect requiring notice to be given to the parent whose consent was alleged to be unnecessary. The apparent ambiguity that arose from the wording of the 1951 statute was corrected by the adoption of 10 O.S. 1957 Supp. § 60.8, wherein notice to the natural parents was made an absolute requirement.

"We note, however, the issue of whether notice was required in this circumstance had already been raised and answered by case law. *Ex Parte Glascock*, 138 Okl. 247, 280, P. 813 (1929), held that a virtually identical predecessor to the above cited statute did not excuse the necessity of giving notice to the affected parents.

"Without notice to the now-deceased father, the court was without jurisdiction to enter any order. Failure to satisfy minimal due process requirements would ordinarily extinguish any judgment obtained.

"There is no mention in the decree concerning notice. Further, the decree was entered on the same date the petition was filed. The decree is void on its face. Under 12 O.S.1971 § 1038, it would therefore be subject to vacation 'at any time, on motion of a party, *or any person affected thereby.*' (Emphasis added.)

"However, because of the unique nature of adoption proceedings, the legislature enacted special legislation to limit the time in which an adoption may be set aside. Title 10 O.S.1971 § 58 reads: No adoption may be challenged on any ground either by a direct or collateral attack more than one (1) year after entry of the final adoption decree (fn. 2) *regardless of whether the decree is void or voidable* . . . . (Emphasis added.)

"The purpose of this statute is to foster stability and finality in the new familial ties created by adoption. The artificially created family can rest assured after the passage of one year that the relationship will not be threatened. Strict adherence to this statute may be circumvented, however, where extreme circumstances exist to justify abrogation.

"The statute has been interpreted in *Matter of Adoption of Lori Gay W.*, Okl., 589 P.2d 217 (1978), (fn. 3) wherein the court held that 10 O.S.1971 § 58, providing a one-year statute of limitations, controls over 12 O.S.1971 § 1038, the general statute allowing two-years in which to vacate judgments. The court limited the holding by stating the statute remains subject to the constitutional limitations of the federal and state constitutions regarding fundamental questions of due process.

"Therefore, the question becomes whether, in this case, the circumstances justify an avoidance of the one-year limitation statute. We find they do not.

"Unquestionably, notice is a fundamental right. However, in the case at bar, the fundamental rights which were denied by the original adoption proceeding belonged to the now-deceased father. Son does not have standing to assert his natural father's right to notice and the record reflects no circumstance under which it may be found that Son's rights were denied. A party must assert his own legal rights and interest and cannot rest his claim to relief on the rights or interests of third parties. *In the Matter of the Guardianship of Randall*, Okl. App., 569 P.2d 549 (1977).

"Under these circumstances the statute would have begun to run as to Son upon his reaching the age of majority."

lished that upon a claim that a foreign judgment is not entitled to full faith and credit, the permissible scope of inquiry is limited to a determination of whether the court of forum had fundamental jurisdiction in the case. . . . ▓ [¶] [T]he California law is clear that the differing public policy or laws of the enforcing state cannot contravene the full faith and credit clause of the Constitution. As has been repeatedly stated, California must, regardless of policy objections, recognize the judgment of another state as res judicata . . . .' (*World Wide Imports, Inc.* v. *Bartel, supra,* [1983] 145 Cal.App.3d 1006, 1010-1011 [193 Cal.Rptr. 830].)" (*Tyus* v. *Tyus, supra,* 160 Cal.App.3d 789, 794.) ▓ The subject matter jurisdiction of the Oklahoma court to decide the validity of an Oklahoma adoption cannot be questioned. "[T]he status of adoption (or lack of adoption) is determined by the laws of the state where the alleged adoption was effected." (*Estate of O'Dea* (1973) 29 Cal.App.3d 759, 775 [105 Cal.Rptr. 756].)

Oklahoma had personal jurisdiction over Kevin, who initiated the proceeding to vacate the adoption and who prosecuted the appeal. The Oklahoma court agreed with Kevin's substantive claims holding the original decree was void but finding the adoption valid nonetheless. ▓ A final judgment must be given full faith and credit regardless of "the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based." (*Milliken* v. *Meyer* (1940) 311 U.S. 457, 462 [85 L.Ed. 278, 283, 61 S.Ct. 339, 132 A.L.R. 1357].) ▓ Our sister state upheld the 1954 decree because Kevin lacked standing to assert Louis' due process right to notice of the adoption. Since "the court of the sister state which rendered the decree has expressly litigated the question of jurisdiction, that determination is res judicata and is itself protected by the full faith and credit clause. The question may not be relitigated in this state. [Citation.]" (*Tomkins* v. *Tomkins* (1948) 89 Cal.App.2d 243, 251 [200 P.2d 821].)

Nor are we impressed with the trial court's reliance on *Estate of Hampton* (1942) 55 Cal.App.2d 543 [131 P.2d 565]. In *Hampton,* as in the instant case, an adult child sought to take as her natural mother's heir. The mother's estate objected on the ground her right to inherit had been cutoff by adoption and she was not entitled to take pursuant to California Probate Code section 257.

The court found the daughter had standing and she successfully challenged the Kansas adoption decree on the ground her natural mother had never received notice of the 1901 adoption. Therefore, the daughter was entitled to share in her mother's estate.

In *Hampton,* the California court was asked to determine a constitutional question—the validity of a Kansas adoption decree granted without due pro-

cess notice to the natural parent. In the present case, *the validity of the adoption has already been decided by the highest court of Oklahoma.* There is no due process question before this court.[3]

We are bound to recognize the Oklahoma court's determination of its own jurisdiction.[4] (*Tyus* v. *Tyus, supra,* 160 Cal.App.3d 789.) ■ "[T]he general rule [is] that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." (*Durfee* v. *Duke* (1963) 375 U.S. 106, 111 [11 L.Ed.2d 186, 191, 84 S.Ct. 242].) A sister state judgment cannot be collaterally attacked by a party who had a full and fair opportunity to litigate in the sister state. (*Craig* v. *Superior Court* (1975) 45 Cal.App.3d 675, 680 [119 Cal.Rptr. 692].)[5]

## II

The trial court further found: "The laws of the State of Colorado provide that a natural child shall inherit from his natural parent upon his death notwithstanding an intervening adoption of that child. [¶] . . . Notwithstanding the validity or invalidity of the adoption of KEVIN LAW HART, dated November 16, 1954, KEVIN LAW HART shall receive a one-third share of the real property of the estate situated in the State of Colorado."

The administratrix argues the Colorado law in this area was incorrectly interpreted. We agree. ■ The Colorado intestate succession statutes do not permit an adopted child to inherit from a natural parent by *intestate*

---

[3]The Oklahoma court expressly ruled, in the 1982 judgment, there was "no circumstance under which it may be found that the son's rights were denied." (*Matter of Adoption of Kevin James Hart, ante,* at fn. 3.) We agree.

[4]We do note, parenthetically, California courts recognize the laws of the state granting the adoption when they must determine whether an adoption is valid. (*Estate of O'Dea, supra,* 29 Cal.App.3d 759, 775.) In this case, Oklahoma granted the 1954 decree, therefore, its laws would be entitled to great weight. We note also, nine years after *Hampton,* in 1951, our Legislature passed California Civil Code section 227d which established a three-to-five-year statute of limitations, applicable to vacating an adoption. In *Walter* v. *August* (1960) 186 Cal.App.2d 395 [8 Cal.Rptr. 778, 83 A.L.R.2d 941], the court upheld an adoption, because of the statute of limitations, against a collateral attack by the natural parents who alleged no notice. *Walter* v. *August* was cited with approval in *Estate of Berman* (1975) 44 Cal.App.3d 687, 694 [118 Cal.Rptr. 804]. It follows, therefore, even if California policy were relevant to the instant action, it is consistent with the 1982 Oklahoma decision in this case.

[5]Kevin has never directly questioned the validity of this 1982 judgment, basing his petition for heirship upon procedural due process defects in the 1954 decree.

succession. (*People* v. *Estate of Murphy* (1971) 29 Colo.App. 195 [481 P.2d 420].)[6]

The judgment is reversed.

Trotter, P. J., and Crosby, J., concurred.

A petition for a rehearing was denied January 16, 1985, and respondent's petition for a hearing by the Supreme Court was denied March 20, 1985.

---

[6]The administratrix also urges us to modify the judgment to provide that Kevin takes no interest in the Colorado real property and distribute it in equal shares to the remaining heirs. But she misunderstands the purpose and function of a Probate Code section 1080 hearing which is to have "the court determine *who are entitled* to distribution of the estate." (Italics added.) We have determined Kevin, pursuant to *his* petition, is not entitled to distribution under the law of California or Colorado. Distribution to the remaining heirs is not before us.